UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA LEE LANE, | No. 2:14-cv-02391-AC |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for period of disability and disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act. Plaintiff's motion for summary judgment and the Commissioner's cross-motion for summary judgment are pending. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion.

PROCEDURAL BACKGROUND

Plaintiff filed her application for DIB on January 12, 2011. Administrative Record ("AR") 18. On the same day, plaintiff filed a separate application for SSI. Id. Plaintiff's application was denied initially on September 1, 2011, and upon reconsideration on February 11, 2012. Id. Plaintiff appeared at a hearing before Administrative Law Judge Peter F. Belli (ALJ) to

1

contest the denials on February 4, 2013.  Id.  The claimant and an impartial vocational expert (VE), Susan L. Creighton-Clavel, testified at the hearing.  Id.  Plaintiff was represented at the hearing by Donald E. Bartholomew, an attorney.  Id.  In a decision dated March 19, 2013, the ALJ found plaintiff not disabled.  AR 30.

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.
>
> 2. The claimant has not engaged in substantial gainful activity since January 1, 2007, the alleged onset date.
>
> 3. The claimant has the following severe impairments: degenerative disc disease and multilevel facet arthritis of the cervical spine; cervical radiculitis; peripheral neuropathy; bilateral carpal tunnel syndrome, status post carpal tunnel release in the past; osteopenia in the hips and lumbar spine; and a history of migraine headaches.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift, carry, push and/or pull twenty pounds occasionally and ten pounds frequently and sit eight hours in an eight-hour workday with normal breaks.  She can stand and walk six hours in an eight-hour workday with normal breaks.  She cannot climb ladders, ropes, or scaffolds. She can occasionally scoop, crouch, crawl and kneel.  She is limited to frequent, but not constant, fingering and is limited to frequent, but not constant flexing or extending of the hands.  She is limited to frequent gross manipulation.  She has no limits on the ability to receive, understand, remember and carry out simple job instructions.  She can frequently perform detailed job instructions. She is able to interact appropriately with coworkers, supervisors and the general public.  She is able to make simple workplace changes and is able to make simple workplace judgments.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born on November 29, 1959 and was 47 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.
>
> 8. The claimant has at least a high school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled,"

whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2007, through the date of this decision.

AR 20–30 (citations to the Code of Federal Regulations omitted).[1]

Plaintiff requested review of the ALJ's decision by the Appeals Council, but it denied review on August 14, 2014, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1.

## FACTUAL BACKGROUND

Born on November 29, 1959, plaintiff was 47 years old, which is defined as a younger person, on the disability onset date and 53 years old at the time of her administrative hearing. AR 28. Plaintiff has not engaged in substantial gainful activity since the alleged onset date. AR 20–21.

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is

---

[1] The ALJ's decision erroneously categorizes plaintiff as a person closely approaching advanced age under 20 C.F.R. § 404.1563 as of January 1, 2007, her alleged disability onset date. AR 18, 28. Plaintiff was, in fact, a younger person under the Federal Regulations until November 29, 2009, when she turned 50. See 20 C.F.R. § 404.1563(c) (defining a "younger person" as an individual under the age of 50). Because plaintiff's 50th birthday was before her date last insured, however, this mistake does not materially affect plaintiff's disability determination at this stage of the proceedings. And in any case, plaintiff's motion does not make this argument.

1  more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th
2  Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a
3  conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.
4  N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute
5  substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v.
6  Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).  Although this court cannot
7  substitute its discretion for that of the Commissioner, the court nonetheless must review the
8  record as a whole, "weighing both the evidence that supports and the evidence that detracts from
9  the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573,
10 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

11     "The ALJ is responsible for determining credibility, resolving conflicts in medical
12 testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)
13 (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,
14 one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v.
15 Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons
16 stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not
17 rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d
18 871, 874 (9th Cir. 2003).  In addition, "[t]he ALJ in a social security case has an independent
19 ''duty to fully and fairly develop the record and to assure that the claimant's interests are
20 considered.''" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

21     The court will not reverse the Commissioner's decision if it is based on harmless error,
22 which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the
23 ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.
24 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.
25 Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

26                                    ANALYSIS

27     Plaintiff seeks summary judgment on the grounds that (1) the ALJ erred in giving no
28 weight to the opinion of plaintiff's treating physician, Dr. Karen Ramsahai, MD; and (2) the ALJ

                                        4

erred in refusing to credit plaintiff's testimony as well as third party reports. The Commissioner, in turn, argues that the ALJ's findings are supported by substantial evidence and are free from legal error. For the reasons discussed below the court finds that the ALJ did not err in rejecting Dr. Ramsahai's opinion or refusing to credit plaintiff's subjective pain testimony and the lay witness reports. Accordingly, the court will grant the Commissioner's cross-motion for summary judgment.

A.     Medical Expert Testimony

    1.     Legal Standards

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine [d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, the opinion of a treating doctor is accorded more weight than the opinion of a doctor who did not treat the claimant, and the opinion of an examining doctor is, in turn, entitled to greater weight than the opinion of a nonexamining doctor. Id. (citations omitted); 20 C.F.R. § 404.1527(c)(1)(2).

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician. Lester, 81 F.3d at 830 (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). If contradicted by another doctor, the opinion of a treating or examining physician can be rejected only for "specific and legitimate reasons" that are supported by substantial evidence in the record. Id. at 830–31 (citation and internal quotation marks omitted). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. An ALJ, however, "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957.

////

////

### 2. Medical History

On May 27, 2010, plaintiff was seen by Dr. Kurt Moehring, DO, at Lassen Medical Group Red Bluff. AR 323–24. At that appointment, plaintiff complained of hand pain and diminished grip strength, along with pain in her elbows and shoulders, and migraines that were exacerbated by stress and neck problems. AR 323. Plaintiff stated at that time that she had modest pain relief with Excedrin. Id. Dr. Moehring indicated that plaintiff was living with her parents at the time and claimed to be in too much pain to work. Id. Dr. Moehring assessed plaintiff as suffering from: (1) chronic pain issues; (2) headaches; (3) carpal tunnel syndrome; (4) neck pain; (5) anxiety disorder; and (6) psychiatric disorder. Id. Dr. Moehring also noted that plaintiff appeared "thin, anxious, and tearful." Id. Based on his assessment, Dr. Moehring ordered lab and x-ray work done, and prescribed plaintiff Cymbalta for her carpal tunnel syndrome. AR 323–24. The medical report generated by plaintiff's radiologist, Dr. D L Casey, MD, states that plaintiff suffered from severe C5/C6 and C6/C7 degenerative disc disease, moderate C4/C5 degenerative disc disease, mild C7/T1 degenerative disc disease, multilevel face arthritis, and muscle spasm. AR 347.

During plaintiff's follow up visit with Dr. Moehring on June 10, 2010, he noted she was more comfortable, relaxed, and pleasant. AR 325. Nevertheless, plaintiff still complained of pain and weakness in her arms and hands. Id. Dr. Moehring assessed plaintiff as suffering from cervical radiculitis at that time, and instructed her to begin taking baclofen and ibuprofen for her chronic pain, along with an increase in Cymbalta. Id. Plaintiff continued to see Dr. Moehring for regular follow up appointments. After an appointment on July 20, 2010, Dr. Moehring opined that plaintiff would likely have difficulty performing certain job duties, "namely those that would require heavy lifting, lifting above the head, prolonged sitting/standing or tasks that require fine manipulation of the hands or activity that may be deemed too stressful." AR 327. Nevertheless, Dr. Moehring recommended that plaintiff find some form of accommodating work. Id.

During plaintiff's next follow up visit on September 20, 2010, Dr. Moehring noted that plaintiff's nerve conduction results were "not particularly impressive, some possible median nerve compression." AR 329. Plaintiff was still reporting pain in her neck and, now, her feet but

1  Dr. Moehring noted that she was less tearful and the Cymbalta seemed to be helping.  Id.  Dr.
2  Moehring also warned plaintiff that she would soon be released to work, and opined that
3  psychological issues may contribute to her symptoms.  Id.  Dr. Moehring also prescribed plaintiff
4  gabapentin for her peripheral neuropathy.  Id.  On November 16, 2010, plaintiff was examined by
5  Dr. Julian P. Alexander, MD, who noted that 15 years ago she had a cataract surgical procedure.
6  AR 353.  Dr. Alexander's examination revealed that plaintiff had a posterior subcapsular cataract
7  and as a result, she underwent a YAG laser capsulotomy.  Id.  Dr. Alexander opined that the
8  capsulotomy would likely allow for significant visual improvement.  Id.
9       On June 13, 2011, plaintiff had her first appointment with Mr. Mark Lamberson, a
10  physical therapist at Red Bluff Physical Therapy.  AR 431.  Plaintiff told Mr. Lamberson that she
11  had undergone carpal tunnel surgery seventeen years ago with good results until the last few
12  years.  Id.  Plaintiff also complained of debilitating neck pain.  Id.  At that time, Mr. Lamberson
13  scheduled plaintiff for three physical therapy sessions a week for the next six weeks.  Id.  Plaintiff
14  consistently attended physical therapy sessions with Mr. Lamberson with generally positive
15  results until August 23, 2011.  AR 397–431.  Nevertheless, plaintiff's symptoms never subsided
16  entirely.  Id.
17       Plaintiff continued seeing Dr. Moehring with similar results until September 2011.  AR
18  484–91.  Dr. Moehring made various small changes to plaintiff's medication regimen during that
19  time, but his observations remained essentially the same.  Id.  Plaintiff next saw Dr. Moehring on
20  January 31, 2012, for exacerbation of her migraines and back pain.  AR 572–73.  At that time Dr.
21  Moehring instructed plaintiff to continue her current medication regimen, plus take Vicodin as
22  needed.  Id.  Dr. Moehring also again commented that he did not "believe [plaintiff] [was] fully
23  disabled and it would be in her best interest to find some form of accommodating work as [they]
24  had] discussed numerous times at previous [appointments]."  AR 573.  Plaintiff then had two
25  more follow up visits with Dr. Moehring on February 21 and May 25, 2012.  AR 571–66.
26       On July 26, 2012, Dr. Jack Kure, MD, performed a CT scan on plaintiff ordered by Dr.
27  Moehring.  AR 587.  Dr. Kure noted that plaintiff had chronic multilevel degenerative disc
28  changes most pronounced at C5–6 ad C6–7.  Id.  In addition, Dr. Kure found "reversal of the

normal cervical lordotic curvature and minor hypertrophic encroachment on the C5–6 neuroforamina bilaterally and the left C6–7 neuroforamina." Id. Dr. Kure also noted there was no evidence of cervical disc herniation but that an MRI might indicate otherwise. Id.

Shortly before plaintiff's CT scan, on July 12, 2012, she saw a new primary care physician at Rolling Hills Clinic, Dr. Gary Kiefer, MD. AR 599. According to Dr. Kiefer's medical report, plaintiff was seeking a second opinion regarding her chronic pain syndrome diagnosis. Id. During plaintiff's visit she complained of neck, hand, and wrist pain, as well as migraines. Id. Dr. Kiefer referred her to the Red Bluff Wellness Center ("Wellness Center") for pain management and ordered a round of x-rays and diagnostic imaging. Id. Plaintiff visited the Wellness Center twice, on July 27, 2012, and August 21, 2012. AR 589–90. After plaintiff's second visit, notes from the Wellness Center indicate that plaintiff continued to have arm pain but otherwise had "marked improvement in her mobility and activity tolerance." AR 590. Plaintiff continued to return to Dr. Kiefer for follow-up visits until her last visit on September 13, 2012. AR 592–99.

On December 13, 2012, plaintiff saw Dr. Karen Ramsahai, MD, at Rolling Hills Clinic. AR 642–44. Plaintiff reported that she was compliant with pain medication, receiving adequate pain relief, and experiencing improved functioning in her activities of daily living. AR 642. Dr. Ramsahai refilled plaintiff's Vicodin prescription, performed a medical check up, and discussed her migraines. AR 642–44. A musculoskeletal exam revealed normal grip strength despite thenar atrophy, and "5/5 upper and lower extremity strength." AR 643. Dr. Ramsahai ordered a number of lab tests, referred plaintiff to the Chico Pain Clinic to evaluate her chronic neck and joint pain, and referred her to Dr. McCarty in rheumatology at Greenville Rancheria. Id. On January 15, 2013, plaintiff had a follow up visit with Dr. Ramsahai. AR 639-40. No physical examination was conducted on this date. AR 639. On this occasion plaintiff reported that she was not getting adequate pain relief. Id. Dr. Ramsahai ordered a routine gynecological examination including a mammogram, screening, and bone density/DEXA. AR 639–40. Plaintiff's DEXA bone mineral study revealed that she suffered from osteopenia in the hips and the spine. AR 647.

3. <u>Analysis</u>

The court finds that the ALJ did not err in discounting Dr. Ramsahai's opinion, because he articulated specific and legitimate reasons for doing so. Finding that Dr. Ramsahai's medical opinion was not entitled to any weight, the ALJ stated the following:

> In this regard, no weight is given to the extreme findings assessed by Dr. Ramsahai in the medical source statement she completed in February 2013, after two visits with the claimant. She limited the claimant to lifting less than ten pounds, standing/walking two hours total, and sitting two hours total in an eight-hour workday. She also stated that the claimant would be absent from work more than three times a month, in addition to the other limitations. (Exhibit 38F). The undersigned finds that her conclusions as to disability or functional capacity are not supported by detailed, clinical diagnostic evidence. 20 CFR §§ 404.1527 and 416.927; SSR 96-2p. She did not cite objective findings that relate to functional limitations and restrictions assessed; and her findings appear to be based solely upon the claimant's recitations of her subjective complaints. Her minimal findings noted at the time of her evaluations are not consistent with the extreme limitations she assessed, nor are they consistent with the findings in the other evidence of record, as described above. As noted above, in December 2012, Dr. Ramsahai noted the claimant reported improved ability to function and perform activities of daily living more tolerably. It also appears that she did not examine the claimant at the time of her statements, which suggests that her conclusions were an accommodation in part by the physician in an attempt to assist the claimant in her disability claim, rather than for treatment.

AR 26.

Plaintiff argues first that Dr. Ramsahai did not base her opinion solely on plaintiff's subjective complaints, as the ALJ stated. ECF No. 16 at 16–17. Plaintiff notes that Dr. Ramsahai also relied on her own observations and clinical studies such as the DEXA bone mineral study. <u>Id.</u> Second, plaintiff argues that Dr. Kinnison's opinion cannot constitute a specific and legitimate reason to discount Dr. Ramsahai's opinion because his clinical findings were essentially the same as Dr. Ramsahai's, only his conclusions differed. <u>Id.</u> at 18–19. As an examining physician, Dr. Kinnison's conclusions cannot constitute a specific and legitimate reason to discount Dr. Ramsahai's conclusions if they are both based on the same clinical findings. <u>Orn</u>, 495 F.3d at 632.

As plaintiff notes, Dr. Ramsahai assessed plaintiff on two occasions prior to completing the Medical Opinion form, and made observations regarding her appearance, demeanor,

9

medication regimen, and medical history.  AR 639–42.[2]  While plaintiff is thus correct that Dr. Ramsahai had access to information other than plaintiff's subjective complaints, the ALJ's concern was with the basis for Dr. Ramsahai's opinion regarding the *degree* of functional limitation.  Given the absence of objective medical evidence to support those findings, it is reasonable to infer that Dr. Ramsahai relied on the subjective complaints plaintiff made at her second visit.  Any error in this regard is harmless in any event, because Dr. Ramsahai's opinion was not rejected simply for its inferred reliance on subjective complaints.  Rather, the ALJ mentioned that issue in the context of his larger point: that Dr. Ramsahai failed to provide an adequate basis for her opinion.  AR 26.

The ALJ is correct that Dr. Ramsahai's report did not identify or discuss any specific clinical evidence to support her findings regarding the degree of plaintiff's functional limitations.  Instead, Dr. Ramsahai simply identified the relevant diagnoses.  AR 656 (identifying medical findings that support limitations as "cervialgia, CTS, osteoarthritis, migraines").  The ALJ correctly found that these references do not constitute "detailed, clinical diagnostic evidence" of functional capacity.  An ALJ need not accept the opinion of a doctor, even a treating physician, if the opinion is brief, conclusory, and inadequately supported by clinical findings.  Thomas, 278 F.3d at 957.  Dr. Ramsahai's single page check-off form, containing no narrative justification for its conclusions, is brief, conclusory, and inadequately supported by clinical findings.  There is therefore no legal error.

Regarding Dr. Kinnison's opinion, plaintiff argues that the ALJ erroneously relied on the opinion of an examining physician to discount the opinion of a treating physician.  Standing alone, Dr. Kinnison's opinion would not constitute a specific and legitimate reason to discount Dr. Ramsahai's opinion.  Dr. Kinnison, an examining physician, found that plaintiff suffered from (1) chronic headaches; (2) neck and shoulder pain; (3) bilateral hand pain with questionable thenar eminence atrophy; and (4) fibromyalgia.  AR 372.  Dr. Ramsahai's assessments were substantially similar and included (1) migraines; (2) cervicalgia (neck pain); (3) myalgia and

---

[2] Only the first of the two visits, however, included objective clinical findings based on examination.  Compare AR 643 with AR 693.

myositis (muscle pain); and (4) osteoarthritis. AR 643. When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not "substantial evidence" sufficient to discount the treating physician's opinion. Orn, 495 F.3d at 632.

The ALJ, however, did not rely on Dr. Kinnison's opinion as grounds to reject Dr. Ramsahai's opinion. Rather, the ALJ accepted Dr. Kinnison's assessment of plaintiff's functional limitations *after* rejecting Dr. Ramsahai's opinion not only as unsupported but also as inconsistent with the other medical evidence and with Dr. Ramsahai's own evaluation of plaintiff on December 13, 2012. The ALJ found that Dr. Ramsahai's opinion was inconsistent "with the findings in the other evidence of record, as described above." AR 26. The medical evidence of record described by the ALJ immediately preceding his discussion of Dr. Ramsahai included plaintiff's course of treatment with Dr. Moehring. The ALJ detailed Dr. Moehring's two-year history of clinical findings, course of treatment, and repeated conclusions that plaintiff's functional limitations did not preclude work. AR 24-25. There is no error in the ALJ's finding that Dr. Ramsahai's opinion is inconsistent with the record as a whole.

Moreover, the ALJ permissibly relied on the inconsistency between Dr. Ramsahai's opinion and her own assessment of December 13, 2012. AR 26. The ALJ noted that during this visit plaintiff "reported improved ability to function and perform activities of daily living more tolerably." Id. The same report notes plaintiff claimed to be "receiving adequate pain relief with current meds." AR 642. Despite these observations, Dr. Ramsahai's Medical Opinion opines that plaintiff can only stand and walk for two hours during an 8-hour day, and sit for two hours in an 8-hour day. AR 656. This inconsistency constitutes substantial evidence supporting the ALJ's decision to disregard Dr. Ramsahai's Medical Opinion. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

For these reasons, the ALJ did not err.

////

////

////

1 | B.   Plaintiff's Credibility

2 |        1.   Legal Standards

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); see also Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted); see also Molina, 674 F.3d at 1112; Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010) ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." (internal quotation marks and citation omitted)). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Lingenfelter, 504 F.3d at 1036 (internal quotation marks and citation omitted); see also Molina, 674 F.3d at 1112; Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Berry, 622 F.3d at 1234 (internal quotation marks and citation omitted); see also Lester, 81 F.3d at 834; Dodrill, 12 F.3d at 918.

       2.   Analysis

The court finds that the ALJ did not err in finding plaintiff's pain testimony not to be credible, because he offered specific, clear and convincing reasons for doing so. In discussing plaintiff's testimony the ALJ states the following:

> Evaluating the claimant's subjective complaints pursuant to 20 CFR 404.1529, 416.929 and the guidelines of Social Security Ruling 96-7p, the undersigned concludes that the claimant is not limited by incapacitating pain or mental limitation from performing sustained work activity at the established residual functional capacity. This conclusion is reached after reviewing the claimant's statements concerning her abilities, which include a fairly wide range of

> activities that are incompatible with the degree of pain or mental limitation the claimant alleges. The record shows that the claimant lives alone. She feeds her cat, chickens and fish. She drives, goes out independently, and does light housekeeping, cooking, laundry and shopping. Her social life revolves around her church. (Exhibits 5E, 11E, 2F, 3F). These activities do not support the degree of pain or mental limitation alleged by the complaint.
>
> There is a lack of medical documentation of an impairment which would cause extreme pain or pain which would compromise the claimant's ability to perform work-related activities. The record as a whole does not reveal that the claimant is precluded from performing all regular, sustained work activity. The level of medication the claimant takes and her level of daily activity suggests that her pain is controlled sufficiently to enable her to perform work activity. There is no evidence of disuse muscle atrophy or wasting commonly associated with severe pain. In addition, there is no evidence of attention, concentration, or cognitive deficits from pain. There is no statement by a physician that the claimant experienced severe and unremitting pain. Moreover, as noted previously, physical therapy records in July 2012 indicate that the claimant had marked improvement in her mobility and activity tolerance. (Exhibits 29F, 35F). Further, in December 2012, the claimant reported improved ability to function and perform activities of daily living more tolerably. She denied intolerable side effects from medications. (Exhibits 36F).
>
> Although the claimant alleged at the hearing that she is significantly limited in her daily activities due to severe pain, the recent medical evidence provided by the claimant's representative does not support a significant change or worsening of her condition.

AR 27–28. In making an adverse credibility determination, the ALJ failed to present any affirmative evidence that plaintiff was malingering, and was thus required to present "clear and convincing" reasons for rejecting plaintiff's testimony.[3] Lester, 81 F.2d at 834.

First, plaintiff argues the ALJ's conclusion that plaintiff's testimony was contradicted by the medical evidence is not supported by the record. Specifically, plaintiff points to lab results supporting plaintiff's claim that she suffers from significant back pain, degenerative disc disease, and osteopenia. ECF No. 16 at 21. These results include a 2010 nerve conduction test, 2010 x-ray impressions, a 2012 CT scan, and a 2013 bone study. Id. Plaintiff is not tasked, however,

---

[3] The Commissioner argues that, contrary to Garrison v. Colvin, 759 F.3d 995, 1015 n.18 (9th Cir. 2014) and Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014), the clear and convincing standard is not the proper standard because it is contrary to 42 U.S.C. § 405(g). ECF No. 21 at 13 n.9. The court, however, is bound to Ninth Circuit precedent and accordingly will apply the clear and convincing standard to the ALJ's credibility determination.

with explaining what evidence in the record supports her contention that she suffers from a severe physical impairment. Instead, plaintiff must show that the ALJ did not give a specific, clear, and convincing reason for determining she lacked credibility. The court finds that plaintiff has not done so in light of the reasons stated in the ALJ's decision.

The ALJ specifically cites the following evidence that plaintiff's pain testimony was not credible: (1) medical records from plaintiff's physical therapist in July 2012 stating she had markedly improved in her mobility and activity tolerance; and (2) a medical report drafted by Dr. Ramsahai on December 13, 2012, stating that plaintiff "reports receiving adequate pain relief" and "improved ability to function and perform ADLs more tolerably" with her medication. AR 27, 589–90, 642. The ALJ also notes that despite plaintiff's allegations of disabling pain, "the medical records show no indication of muscle wasting, deformity, gross muscle atrophy, or neurological defects." AR 24. The ALJ's decision also points out the fact that plaintiff's longtime treating physician, Dr. Moehring, "[o]n multiple occasions . . . opined that the objective clinical findings did not warrant disability." Id. In sum, the ALJ's decision does more than simply assert the medical evidence in support of plaintiff's testimony is insufficient, it points specifically to reports that cast doubt upon her claims. Plaintiff does not explain why these records do not constitute a specific, clear, and convincing reason to find plaintiff's testimony lacks credibility. Indeed, the court finds that the cited medical evidence adequately supports the ALJ's credibility determination.

Second, plaintiff argues that her treatment history is consistent with her pain testimony. Plaintiff notes that she was prescribed Baclofen, Vicodin, Gabapentin, and Ibuprofen for pain relief. ECF No. 16 at 21. Nevertheless, she claims that she has continued to experience pain daily. Id. "Conservative treatment" may be sufficient to discount a claimant's testimony regarding the severity of an impairment. Parra v. Astrue, 481 F.3d 742, 750–51 (9th Cir. 2007). In finding that plaintiff had been "treated conservatively," AR 24, the ALJ drew attention to a number of facts in the record. The ALJ pointed out that there is no indication in the record that surgery was ever suggested to plaintiff, as might be expected for intractable pain. Id. In addition, the ALJ found that "the level of medication [plaintiff] takes . . . suggests that her pain is

14

1   controlled sufficiently to enable her to perform work activity." AR 27.  In light of the deference
2   afforded ALJs' credibility determinations, Saelee, 94 F.3d at 522, the court finds the ALJ's
3   determination that plaintiff's treatment regimen was conservative is supported by substantial
4   evidence.
5   　　　Third, plaintiff argues that her daily activities were consistent with her pain testimony.
6   This is plaintiff's strongest argument under the governing law.  "[I]f a claimant engages in
7   numerous daily activities involving skills that could be transferred to the workplace, the ALJ may
8   discredit the claimant's allegations upon making specific findings relating to those activities."
9   Burch, 400 F.3d at 681.  In addition, an ALJ may find a claimant's pain testimony lacks
10  credibility if that testimony is inconsistent with her claimed limitations.  Garrison v. Colvin, 759
11  F.3d 995, 1016 (9th Cir. 2014).  Nevertheless, "disability claimants should not be penalized for
12  attempting to lead normal lives in the face of their limitations."  Reddick v. Chater, 157 F.3d 715,
13  722 (9th Cir. 1998); see also id.; Om v. Colvin, 545 F. App'x 665, 667 (9th Cir. 2013).
14  　　　Plaintiff's evidence documents daily activities that are limited and could be consistent
15  with her claimed limitations.  In her function report plaintiff describes her daily activities as
16  including (1) feeding her pet cat, chickens, and fish; (2) preparing simple meals such as
17  sandwiches, cereal, and pasta; (3) going grocery shopping; (4) doing laundry and cleaning dishes;
18  and (5) socializing with people at church.  AR 226, 230.  Plaintiff explicitly states that she could
19  not prepare complex meals because of the pain she experienced in her hands.  AR 228.  Plaintiff
20  also states that sometimes she requires assistance from her parents in opening jars, and
21  performing other tasks such as feeding her pets and going grocery shopping.  AR 227–29.  In her
22  testimony before the ALJ plaintiff went into further detail, explaining that she sometimes
23  experiences pain gripping the steering wheel of her car, buttoning her clothes, and braiding her
24  hair.  AR 86, 90–91.[4]  These activities are consistent with plaintiff's pain testimony, which
25  revolves around migraines and chronic pain.  AR 204.

---

27  [4] It is also important to note that the ALJ's assertion that plaintiff lives alone is not entirely
    accurate; plaintiff lives in a trailer by herself, but that trailer is located on her parent's property.
28  AR 73.

On the other hand, as previously noted, plaintiff's function report and hearing testimony are inconsistent with statements she made to medical providers about her functioning. AR 27, 589–90, 642. Less than two months before the hearing, plaintiff reported that pain medication was providing adequate relief, and that she was able to perform activities of daily living. AR 642. The inconsistency of plaintiff's own statements about her activities of daily living was properly considered by the ALJ in evaluating her credibility. Moreover, even if the ALJ erred in concluding that the specific daily activities reported in plaintiff's function report and hearing testimony are inconsistent with her claimed limitations, that error is harmless in light of the other specific, clear, and convincing reasons stated for rejection of plaintiff's pain testimony.

In accordance with the foregoing, the court finds that the ALJ did not commit legal error in deciding that plaintiff's pain testimony was not credible. See Edlund, 253 F.3d at 1156 (the ALJ is responsible for determining credibility); Thomas, 278 F.3d at 954 (where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld).

C.     Third Party Statements

     1.     Legal Standards

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he expressly determines to disregard such testimony. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ must consider this testimony in determining whether a claimant can work. Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); see also 20 C.F.R. § 416.913(d)(4); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). However, in doing so the ALJ is free to evaluate that testimony and determine the appropriate weight it should be given in the light of the other evidence. To discount the testimony of a lay witness, the ALJ must "give reasons that are germane to each witness." Stout, 454 F.3d at 1053; see also Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009). An ALJ who gives sufficient reasons for discounting a claimant's testimony may, in turn, rely on those reasons to discount substantially similar third party testimony as long as he does so explicitly.

////

1 Valentine, 574 F.3d at 694; Stephens v. Colvin, No. 13-CV-05156-RS, 2014 U.S. Dist. LEXIS

2 170423, at *21–22 (N.D. Cal. Dec. 9, 2014) (D.J. Seeborg).

      2.     Analysis

The court finds that the ALJ did not err by discounting the third party statements of plaintiff's friends and family, because he gave reasons germane to their statements for doing so. In discounting the submitted third party reports, the ALJ stated the following:

> More recently, multiple third-party statements indicate that the claimant's activities are quite limited. The undersigned has reviewed statements submitted by the claimant's mother, Roberta DeGraw, and father, Richard DeGraw; sister, La Deanne Stubbs; Shuree Lee Boling; Dian Lynn Frydenger; Karey Giguere; and Susanna Crooks. (Exhibits 6E, 12E, 18E, 19E, 20E, 32F, 33F, 34F). However, the record does not provide evidence of an ongoing or worsening condition that would significantly reduce claimant's functioning at this time. The undersigned finds that these statements are inconsistent with the medical record described above.

AR 28. Plaintiff argues the ALJ's blanket assertion that the third party testimony is inconsistent with the medical evidence is too vague to constitute a specific reason germane to each witness. ECF No. 16 at 26. The Commissioner, on the other hand, claims that the ALJ's reasons were sufficient. ECF No. 21 at 15. In particular, the Commissioner points to "[p]laintiff's own admissions that medication adequately controlled her pain and enabled her to better perform her activities of daily living (AR 24; 26–27; 401; 488; 642), and the conclusions of [p]laintiff's long-time treating physician that she was not disabled and could work (AR 482; 484; 486–87)." Id.

As the court has already discussed in detail, the ALJ's decision found plaintiff's pain testimony not to be credible in part because it was contradicted by her medical records. The ALJ, in turn, explicitly relies upon this same reason to discount the third party reports of plaintiff's friends and family. After reviewing the relevant third party reports the court finds them to be substantially similar to plaintiff's testimony. Accordingly, the ALJ did not err because he discounted the lay witness testimony in this matter by giving reasons germane to each witness. See Valentine, 574 F.3d at 694.

////

////

CONCLUSION

In light of the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 16, is DENIED;

2. The Commissioner's cross-motion for summary judgment, ECF No. 21, is GRANTED; and

3. This Clerk of the Court is directed to close the case.

DATED:  March 17, 2016

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE